**In the Matter of CERTAIN GRAND JURY WITNESSES.**

United States District Court
E. D. Michigan, S. D.
Oct. 1, 1962.

---

2. Hamilton v. Alabama, 338 U.S. 52, at p. 54, 82 S.Ct. 157, at p. 159, 7 L.Ed.2d 114.

J. Paul Allred, Jr., Sp. Atty., Dept. of Justice, for the United States.

James E. Haggerty, of Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., for responding witnesses.

ROTH, District Judge.

Witnesses Sally Jones, Mary Thomas, and June Delsando appeared before a Grand Jury conducting an investigation into alleged violations of 29 U.S.C. § 501 (c), 29 U.S.C. § 439(c), 18 U.S.C. § 371, and other related crimes arising out of the purchase with union funds of an automobile for the private use of an individual who had no connection with the union. They refused to answer questions before the Grand Jury on the ground that the answers would tend to incriminate them. They were then subpoenaed to appear before the Bureau of Labor Management Reports in Detroit where they testified, and thereby allegedly acquired immunity from prosecution. 29 U.S.C. § 521(b). When questioned again by the Grand Jury with respect to the same subjects as to which they testified before the Bureau of Labor Management Reports, they again asserted their privilege against self-incrimination, contending that they would not be immune from prosecution for testimony given before the Grand Jury.

Government counsel concedes that the witnesses were summoned by the Bureau of Labor Management Reports because the Bureau of Labor Management Reports could grant them immunity under the Landrum-Griffin Act, so that later they could be compelled to testify before a Federal Grand Jury.

On September 11, 1962, the aforesaid witnesses were compelled to appear before this Court, at which time Government counsel by oral motion prayed for an Order directing the witnesses to testify before the Grand Jury under penalty of contempt for their failure so to do.

The Government takes the position that the immunity granted the witnesses in accordance with the provisions of the Landrum-Griffin Act remains with them while in the Grand Jury room, whereby they lost the right to exercise the privilege granted to them by the Fifth Amendment and are compelled to testify as to any questions put to them concerning the matters covered in the testimony of the witnesses before the Bureau of Labor Management records.

The witnesses contend that they may invoke the constitutional privilege against self-incrimination before the

Grand Jury because the relevant statute provides for immunity only with respect to testimony given before the Secretary of Labor and not for testimony given before the Grand Jury.

The Fifth Amendment of the Constitution provides:

"Nor shall any person * * * be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; * *."

Title 29 U.S.C. § 521 of the Labor-Management Reporting and Disclosure Act of 1959 reads in part as follows:

"(b) For the purpose of any investigation provided for in this chapter, the provisions of sections 49 and 50 of Title 15 (relating to the attendance of witnesses in the production of books, papers, and documents), are made applicable to the jurisdiction, powers, and duties of the Secretary, or any officers designated by him."

Title 15 U.S.C. § 49 reads as follows:

"No person shall be excused from attending and testifying or from producing documentary evidence before the commission, or in obedience to the subpoena of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpoena issued by it: Provided, That no natural person so testifying shall be exempt from pros-

ecution and punishment for perjury committed in so testifying."

It is well established that the form of immunity granted by the Federal Trade Commission Act, which is incorporated by reference into the Labor Management Reporting and Disclosure Act, is co-extensive with the constitutional guarantee against self-incrimination. See Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819. The constitutionality of its use to compel testimony which would otherwise be self-incriminating is beyond dispute. Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609.

In this case, the questions asked before the Grand Jury related to the same matters as were testified to before the Bureau; and, in the opinion of the Court, criminal sanctions cannot be imposed upon the witnesses because of these matters, so that the answers sought would not be self-incriminating. Consequently, the privilege against self-incrimination cannot be asserted.

It is the opinion of the Court that the provisions of 29 U.S.C. § 521, and 15 U.S.C. §§ 49 and 50, confer complete immunity upon the witnesses with respect to the transactions, matters, things, and matters substantially related thereto, concerning which they testified to before the Bureau of Labor Management Reports, and that such immunity from prosecution extends to the witnesses' testimony before the Grand Jury. It is accordingly ordered that the witnesses Sally Jones, Mary Thomas, and June Delsando return to the Grand Jury and give testimony with respect to the transactions, matters, things, and matters substantially related thereto, upon which they gave testimony before the Bureau of Labor Management Reports.

**Albert A. BATH**

v.

**UNITED STATES of America.**

**Civ. A. No. 13332.**

United States District Court
S. D. Texas,
Houston Division.

Nov. 30, 1962.

Childress, Port & Crady, Virgil Childress, Houston, Tex., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., of United States, and Edward S. Smith, John F. Murray, Arthur L. Biggens, John A. Bailey, Attys., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., and John H. Baumgarten, Asst. U. S. Atty., Houston, Tex., for defendant.

NOEL, District Judge.

The facts of this case are not in dispute and have been stipulated. In February 1953 Albert A. Bath, the taxpayer, and Adele L. Bath, his wife, sold certain Texas land owned by them as community property. They received for the land a total consideration of $139,090.00, of which $29,000.00 was paid in cash and the balance of $110,090.00 was evidenced by the purchaser's promissory note for $110,090.00 secured by a vendor's lien reserved by the sellers. Said note was payable in ten annual payments of $11,009.00 each, and bearing interest at the rate of four per cent per annum payable annually. A long-term capital gain of $112,086.19 or 80.585% of the purchase price was realized on the transaction. In their joint income tax return filed for the year 1953, taxpayer and his wife elected to report their gain on the installment method; i. e., they elected to pay income tax on the gain as the purchase price was collected.

Taxpayer's wife died on December 10, 1954. At the time of her death only one principal payment had been made on the note, the principal balance then being $99,081.00. Since the note was community property, one-half of the principal sum, or $49,540.50, was reported in the wife's federal estate tax return as a part of her taxable estate, and her estate tax was assessed and paid on that valuation. The entire unpaid balance of the note was paid by the purchaser of the property in the years 1955 and 1956, $44,036.00 being paid in 1955 and $55,045.00 being paid in 1956. Mr. Bath's community interest in the payments received on the note in 1955 and 1956 are the particular items in dispute. Mrs. Bath's estate's community interest is not in dispute; it has been treated as taxable gain to the extent of the 80.585% profit portion.

The sole question presented in this case is whether for the taxable years 1955 and 1956 Mr. Bath, a surviving spouse in a community-property state, is entitled under Section 1014(b) (6) of the Internal Revenue Code of 1954 to use a

"stepped-up" basis for reporting his community share of a long-term capital gain realized on a sale of community property prior to his wife's death in 1954, where Mr. and Mrs. Bath had elected to report the gain on the installment basis under the 1939 Code predecessor of Section 453 of the 1954 Code, so as to result in the gain being treated as a tax-free return of capital to him.

Section 1014 of the Internal Revenue Code of 1954 sets out the rules for determining the basis of property acquired from a decedent or passed from a decedent. When the basis of property is determined under this section, Section 1014(a) provides that the basis is the fair-market value of the property at the date of the decedent's death or, where alternate valuation under Section 2032 is used for estate tax purposes, the fair-market value one year later.

Section 1014(b) (6) of the 1954 Code provides in effect that in a community property state a surviving spouse's one-half share of community property owned by the surviving spouse and the decedent is considered property acquired from or passed from a decedent for purposes of basis revaluation under Section 1014(a) so long as one-half of the whole of the community interest is includible in determining the value of the decedent's gross estate. The surviving spouse is said to have a "stepped-up" basis as to his one-half of the community property when the fair-market value of that community property at the date of the decedent's death is higher than its original cost, and is said to have a "stepped-down" basis when the fair-market value is less than such cost.

In 1948 when Congress revised the tax structure so as to equalize the incidence of taxation between community-property states and common-law states, it enacted the predecessor of Section 1014(b) (6) of the 1954 Code. The stated purpose of the 1948 enactment of what is now Section 1014(b) (6) was to equalize the capital gains tax in community and non-community-property states. S.Rep.No. 1013, 80th Cong., 2d Sess., p. 29 (1948–1 Cum.Bull. 285, 306), U.S.Code Cong.Service 1948, p. 1163. Prior to 1948 the basis of the community one-half interest of the surviving spouse in a community-property state was one-half of the original cost of the community property, and not one-half of its fair-market value at the decedent spouse's death, since the surviving spouse's one-half interest was vested prior to the decedent spouse's death and was not acquired from or passed from the decedent within the meaning of the predecessor to Section 1014. On the other hand, when a husband owning the family property died in a non-community state, bequeathing, for example, one-half or all the property to his wife, she acquired a new basis under the predecessor to Section 1014, just as she now does under Section 1014. Therefore, it was the purpose of the 1948 predecessor of Section 1014(b) (6) to avoid discrimination against community-property states.

In the case now before the Court, the plaintiff asserts that his community one-half interest in the vendor's lien note is property which acquired a new basis by virtue of Section 1014(b) (6) at the time of his spouse's death, which new basis would be one-half of the fair-market value of the note at the said date of death. By virtue of Treas. Reg. 20.-2031–4, the fair-market value of the note is presumed to be the amount of unpaid principal plus interest accrued to the date of death, unless the executor establishes that the value is lower. Plaintiff therefore asserts that he is entitled to recover the "stepped-up" basis of his one-half interest in the note before any taxable income could be realized by him and since the amount collected by him was exactly equal to the "stepped-up" basis of his one-half interest, he realized no income from the note after his wife's death; i. e., his one-half interest in the 1955 payment of $44,036.00 and the 1956 payment of $55,045.00 in the note was merely a return of his "stepped-up" basis and he is entitled to a refund of the taxes in the amount of $10,650.16 paid thereon plus interest.

I hold that a surviving spouse is not entitled to use the "stepped-up" basis of 1014(b) (6) to report his community one-half of the capital gain on the collection of a vendor's lien installment note where there was no sale or other disposition of the note subsequent to the death of his spouse, and where the note was given as partial payment for a community asset which was sold by the taxpayer and his wife prior to her death and the couple had elected to report their gain on the installment method; therefore, plaintiff is not entitled to a refund of taxes for the years 1955 and 1956.

The "stepped-up" basis provision of Section 1014(b) (6) becomes operative and has importance only in situations where sales or exchanges have occurred subsequent to the event, the death of one of the spouses, causing the basis to be "stepped up."

The transaction of controlling importance in this case is the sale of land in 1953. The gain realized by Mr. Bath on this transaction is determined from the basis of his interest in the land at the time of the sale. By virtue of Section 1014(b) (6) Mr. Bath did receive a "stepped-up" basis in the vendor's lien note, but that "stepped-up" basis will become operative only upon the sale or exchange of the vendor's lien note and will be of importance only for the purpose of determining his gain or loss in such a transaction. His "stepped-up" basis is of no relevance in determining the amount of his gain from the sale of the land which is the gain in issue in this case.

If the vendor's lien note had been sold subsequent to the death of Mrs. Bath, with the purchaser receiving the final payments of 1955 and 1956 and with Mr. Bath receiving only his one-half interest in the proceeds from the sale of the note, a different question would have been presented to this Court. In this case, however, there has been no sale or exchange of the note since the death of Mrs. Bath to which the "stepped-up" basis provided for in Section 1014(b) (6) could apply in determining gain or loss.

Moreover, to retroactively accord to a prior sale a "stepped-up" basis under Section 1014(b) (6) for determining the gain on the sale would, by benefiting only community-property taxpayers, violate the policy underlying the Section which is to equalize the incidence of taxation in community-property and non-community property states. S.Rep. No. 1013, 80th Cong., 2d Sess., p. 29 (1948–1 Cum.Bull. 285, 306).

The aforementioned holding being dispositive of the case, it is unnecessary to pass upon the additional contentions of the defendant. Plaintiff's request for a refund of taxes which he alleges that the erroneously paid is therefore denied.

The foregoing is adopted as findings of facts and conclusions of law.

Raymond A. Cunningham, Atlanta, Ga., for plaintiff.

Lawrence I. Hollander, Miami, Fla., for defendants.