Robert L. PHINNEY, District Director of Internal Revenue, Appellant,

v.

Ruth Kiehl CHAMBERS et al., Appellees.

No. 24729.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1968.

Certiorari Denied May 27, 1968.
See 88 S.Ct. 1848.

Ernest Morgan, U. S. Atty., Andrew L. Jefferson, Jr., Asst. U. S. Atty., San Antonio, Tex., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harris Weinstein, David O. Walter, Howard J. Feldman, Robert S. Rifkind, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for appellant; Ted Butler, Asst. U. S. Atty., of counsel.

Charles N. Avery, Jr., Austin, Tex., Charles W. Hall, Phillip L. Mann, Laurance C. Mosher, Jr., Houston, Tex., for appellees; Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., McKay & Avery, Austin, Tex., of counsel.

Before TUTTLE and GEWIN, Circuit Judges, and HUNTER, District Judge.

TUTTLE, Circuit Judge:

This appeal from a summary judgment awarding to the individual appellee, Mrs. Chambers, and to the corporate appellee, Bank of the Southwest National Association, Houston, purporting to act as trustee for Mrs. Chambers, separate judgments for recovery of amounts paid by each of them separately on account of income attributed by the government to Mrs. Chambers, presents the question whether the trial court correctly applied the three year statute of limitations rather than the six year statute for the assessment of income taxes against the parties.

The facts are not in dispute. In 1954, Mrs. Chambers and her husband, Dunbar N. Chambers, owned as community property certain shares of the capital stock of High Point Realty Company. On July 1, 1954, they sold this stock at a profit to Mr. Frank W. Sharpe of Houston, Texas, receiving a cash down payment, with the balance of the consideration being evidenced by Mr. Sharpe's promissory note payable on or before September 1, 1957.

On a joint income tax return for 1954, the Chambers reported the sale and reported the income therefrom on the installment method in accordance with Section 453 of the Internal Revenue Code of 1954 and the Treasury Regulations thereunder.

On October 27, 1956, Mrs. Chambers' husband died and, under his will, the bank appellee became his executor. The bank took possession of Mrs. Chambers' half interest in the community property as well, since under the Texas laws all community debts may be satisfied out of all community property.

On the date of Mr. Chambers' death, the unpaid principal of the Sharpe note was $795,957.73, which was its fair market value. Mrs. Chambers' half interest in that note of $397,978.87 was included in the gross estate for federal estate tax purposes. Its value was not disputed and in fact was accepted by the government. After some further payments were made, the then principal balance of the note,

$751,472.13 was paid and collected in full on April 11, 1958.

For the fiscal year ended September 30, 1958, the bank, on March 13, 1959, pursuant to an extension of time for filing, filed a U. S. fiduciary income tax return, Form 1041, as executor for the decedent's estate. The bank reported on Schedule D of such return, $375,736.07. This item was reported on this return in the following manner: On line 7, under Schedule D and under the heading, "Long Term Capital Gains and Losses," there was an item, "Installment sale—schedule —$318,904.77." On the attached schedule, there were listed four categories under Schedule D:

"Sale of breeding herd,—"
"Sale of stock,—"
"Contract to sell Brahman herd"
"Installment sale."

Under "Installment sale" was the following explanation:

"Sale of High Point Realty stock
Amount collected—fiscal year
ended 9–30–58                                    $378,736.07
"Times percent of gross profit              84.07468%
"Gain to be reported:                          $318,904.79."

———◆———

On the same day that the foregoing report was made, for the income taxes due by Dunbar Chambers' estate, the bank filed a return in the following designation:

"Mrs. Dunbar N. Chambers—community one-half of estate of Dunbar N. Chambers, year ended 9–30–58."

On this return there is, of course, a corresponding Schedule D "Long Term Capital Gains and Losses—Assets Held More Than Six Months." On this return, line 7 appears to be blank, although there are some figures apparently on this schedule that are illegible. There appears to be no item to correspond at that place with the entry of "Installment Sale" shown on the husband's return. However, on a separately attached schedule, marked "Schedule D" there are several categories of Schedule D items which differ in significant respects from those attached to the corresponding schedule to the return filed on behalf of the estate of Dunbar N. Chambers. The items listed in this return are:

"Sale of breeding herd—
"Sale of Stock—
"Contract to sell Brahman herd—."

*There is no item "Schedule D—Installment Sale"* with the explanation such as is given on the other return itemizing the amount collected during the fiscal year ended 9–30–58, together with the percent of gross profit to be attributed thereto (84.87468%) and the gain to be reported of $318,504.79. Instead, *under the heading "Sale of Stock"* the last entry was as follows:

| Descr [iption] | DATE Acquired | Sold | PRICE | BASIS | GAIN OR LOSS |
|---|---|---|---|---|---|
| High Point Realty Stock | 10–27–56 (date of death) | 1958 | $375,736.06 | $375,736.06 | —0— |

Mrs. Chambers filed a personal United States Income Tax Return, Form 1040, for 1958. She made no report or reference to the payment of $751,472.13, or her half, on the Sharpe installment note.

More than three years after the returns were filed by the bank and Mrs. Chambers respectively, the government determined that Mrs. Chambers' half interest in the community property note of Sharpe did not acquire a basis equal to its fair market value on the date of her husband's death. Consequently, its basis did not offset the amount received, and income resulted. Since the bank had purported to file a fiduciary return for Mrs. Chambers' half of the community property and since Mrs. Chambers did not report this amount in her individual return, the government assessed a substantial tax deficiency against the bank on the return filed by it and separately against Mrs. Chambers for failing to include the item received on the installment note in her own individual return. The government also challenged several other items of deductions on the bank's return.

The parties agree that if the three year statute of limitation applies to these returns, then the tax was not assessable and the trial court correctly decided in favor of the two plaintiffs below, the appellees here, granting the tax refunds of the amounts which each of them respectively paid in response to the assessments.

The question whether the three year statute was applicable depends upon whether the "taxpayer" omitted from the gross income stated in the return "an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." 26 U.S.C.A. § 6012.

The government contends that Mrs. Chambers should have reported the tax, and her failure to do so clearly brings the six year statute into play, for there was no disclosure on her return of any information that would give a lead to this item of income. The taxpayer, on the other hand, contends that the bank, as executor of the husband's estate, was legally required to file the return and that the inclusion of the amount of income received on behalf of Mrs. Chambers and reported as a "sale of stock" acquired the date of Mr. Chambers' death, with a basis equal to the sales price, prevented the six year statute from being applied. The contention is that there was no omission of any amount of gross income and even if there was, there was an adequate disclosure "in a manner adequate to apprise the secretary or his delegate of the nature and amount of such item."

The District Director claims the right to proceed under the six year statute of limitations by reason of the provision of Internal Revenue Code of 1954, § 6501 (e) (1) (A) which provides as follows:

"(A) General rule.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—"

The taxpayer, on the other hand, contends that since the figure given for the gross income of the taxpayer equaled the correct figure, if it had been stated with technical correctness as the payment of an installment note rather than the sale of stock, there was no omission from gross income of "an amount" at all. For this proposition, reliance is placed on Colony, Inc. v. Commr. of Internal Revenue, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed. 2d 1119. In addition, the taxpayer contends that subparagraph (ii) of Section 6501(e) (1) (A) prevents the application of the general rule stated above. Section (ii) provides as follows:

"(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return, if such amount is disclosed in the return, or in a statement attached to the return, in a man-

ner adequate to apprise the Secretary or his delegate of the nature and amount of such item."

Rather than attempt to ascertain the true state of the Texas law, as it bears on the requirements of the federal taxing laws for the filing of a fiduciary return, in order to decide whether in the circumstances here present it was the duty of Mrs. Chambers or of the executor of her husband's estate to file the income tax return for the fiscal year ending September 30, 1958, we will assume for the purpose of this opinion that it was the duty of the bank, since, in any event, the government is entitled to retain the amount of the taxes only once. We do this because it is simpler to resolve this purely federal problem in a manner that will be decisive of the litigation that to explore the effects here of the community property laws of Texas. For a discussion of some aspects of this problem see Sneed v. Commissioner of Internal Revenue, 220 F.2d 313 (5 Cir. 1955); Henderson's Estate v. Commissioner of Internal Revenue, 155 F.2d 310, 164 A.L.R. 1030 (5 Cir. 1946); Barbour v. Commissioner of Internal Revenue, 89 F.2d 474 (5 Cir. 1937).

Much of the problem existing here arises from the fact that prior to the decision of the case of Bath v. United States, 211 F.Supp. 368, S.D.Tex., aff. 323 F.2d 980, 5 Cir., 1963, some community property state taxpayers were contending that in a situation such as here existed as to Mrs. Chambers, her half interest in the Sharpe promissory note would take a stepped-up basis at the time of her husband's death, under the provisions of § 1014(b) (6) of the Internal Revenue Code. Dealing with this proposition, the taxpayer's brief says:

"Consistent with that belief, the taxpayers reported the transaction in question as resulting in no gain by reason of a step-up in basis, and the three year statute of limitations expired without any challenge having been made by the government to the taxpayers reporting.

"After the three year period expired, the trial court decision was handed down in Bath v. U. S., 211 F.Supp. 368 (S.D.Tex., Nov. 30, 1962) aff. 323 F.2d 980, 5 Cir., 1963.

"The government then had [3 f.n. not copied] legal authority for the first time to deny the step up in basis, but the three year statute had run and the only way the government could get the horse back into the barn was to try to force the transaction under the six year statute."

The basic difficulty with the taxpayer's position here is that taxpayer simply didn't give the government a chance to make a "challenge" to the taxpayer's contention, because the taxpayer made no such contention on the return it filed. Although it fairly and simply reported on Mr. Dunbar Chambers' return that he had received a final payment on the installment note of which some 84% represented gain when his return was filed on March 13, 1959, it, for some reason that is not apparent, reported the income received as "trustee" for Mrs. Chambers in precisely the same amount under a *different* heading and under an *incorrect designation as of the sale of stock* acquired on 10–27–56 and sold in "1958." In point of fact, neither the trustee for Mrs. Chambers or Mrs. Chambers personally owned any High Point Realty Stock at any time after the sale to Mr. Sharpe in 1954. There was no sale of stock by the trustee either acting for Mrs. Chambers or as executor of the estate of her husband.

It appears that the same accounting firm, that on March 13, 1959 prepared the return filed for the bank as executor of Chambers' estate and correctly showed the collection of the Sharpe note under a heading separately listed on the schedule as "Schedule D—Installment Sale" and then showed the "amount collected for the fiscal year ended 9–30–58 and the computation of the percent of the amount received that represented profit then turned right around and on the return prepared for the bank to file for Mrs. Chambers' interests *on the same*

*day* showed no such separate item under Schedule D, but, instead, placed a similar amount of income as being received for a "sale of stock."

We consider it significant that at the very time that the government was contesting the "step-up in basis" theory of a community interest in an installment note such as Mrs. Chambers owned in the *Bath* case in another district court in Texas, this return was lying unchallenged in the files of the Internal Revenue Service.

It simply defies belief that the Internal Revenue Service, while contesting the right of Bath to claim a stepped-up basis in connection with a community property interest of less than $50,000 would have complacently permitted the similar claim for stepped-up basis in the Chambers estate to go unchallenged had the return filed on behalf of Mrs. Chambers disclosed what was really at issue, that is, as claimed by taxpayer, the amount received was in payment of an installment note, which, by virtue of the provisions of Section 1014(b) (6) of the Internal Revenue Code acquired a stepped-up basis upon the death of her husband. No better illustration could be devised to show the need for adequate disclosure as required under sub-section (ii).

The taxpayer claims that there is no need to inquire into the adequacy of the disclosure here because under the theory supported by the United States Supreme Court decision in Colony, Inc. v. Commr., supra, so long as the gross amount reported was not in error, there was no omission of "an amount" from the return at all. In light of the subsequent enactment of the 1954 Internal Revenue Code, including sub-paragraph (ii), we think the following language of the court's opinion in *Colony* should control here:

> "We think that in enacting Section 275(c) [the 1939 Code provision, which is the predecessor of Section 6501(e) (1)] Congress manifested no broader purpose than to give the commissioner an additional 2 years [subsequently increased to 3 years] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the commissioner is at a special disadvantage in detecting errors." 357 U.S. 32, 36, 78 S.Ct. 1038.

We conclude that the enactment of subsection (ii) as a part of section 6501(e) (1) (A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an *item* of *income* of the requisite amount or misstating of the nature of an item of income which places the "commissioner * * * at a special disadvantage in detecting errors."

This provision of the statute says that in determining whether "an amount" had been omitted from gross income, there shall not be taken into account any amount which is omitted if such amount is so shown on the return as to make it reasonably possible for the Secretary to detect errors. This, it seems to us, is to say that if an item of income is shown on the face of the return or an attached statement that is *not* shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it *is* the omission of "an amount" properly includable in the return.

It seems here that there can be no substantial argument that the disclosure made by the bank's return was "adequate to apprise the Secretary or his delegate of the *nature* and amount of such item." (Emphasis added.)

It seems worth commenting on that here we do not have a novice individual taxpayer who had attempted to state an item of income, but has chosen a technically incorrect handle to attach to it and is thus penalized for his lack of technical skill. We have, instead, a return filed for the taxpayer by the same accounting firm that had handled the taxpayer's return before Mr. Chambers' death and whose client has now alleged in its brief before us in this case that taxpayer was fully aware of the tax ef-

fects of the death of one of a community on the remaining member's ownership of a community interest in an installment note. Moreover, as already noted, the same accounting firm prepared for filing on the same day a return for the estate in which it adequately and clearly showed that income was received on the installment note as a payment as to which 84% represented taxable gain and then, on the return in question, incorrectly and improperly listed the income as if it were received for a sale of stock which had been acquired by the trustee and sold at the basis in the hands of the trustee, with, therefore, no tax owing.

■ While it would be simple to say that the proof that this item was not disclosed in a manner adequate to apprise the commissioner of its nature, is the fact that the commissioner did not discover the nature of this item at the very time that he was contesting the treatment of a similar amount in the Bath estate where the facts were properly disclosed, probably we cannot base our decision on that ground. We then turn to the conclusion that it would simply be a distortion of the meaning of ordinary words of common usage to hold that the reporting of this substantial income —the final payment on an installment sale as to which admittedly 84% was gain, and thus taxable during the calendar year—as a sale of stock that had been acquired by the fiduciary and sold at its basis in the hands of the fiduciary amounted to an adequate disclosure under the applicable statute. For one discussion of the meaning of paragraph (ii) see Richards, The Extended Statute of Limitations on Assessment, 12 Tax Law Rev. 297, 316 and see Walker v. Commr. of Internal Revenue, 46 T.C. 630, 639.

We hold, therefore, that the trial court erred in applying the three year statute of limitations to the bank's return and the judgment in its favor must be reversed and the case remanded for further proceedings consistent with this opinion.

As to the judgment in favor of Mrs. Chambers, the government concedes that in the event of our determining that the bank was the proper fiduciary, a judgment in her favor is entitled to stand. The judgment in favor of Mrs. Chambers is, therefore, affirmed.

Reversed as to the Bank of the Southwest National Association, Houston, affirmed as to Ruth Kiehl Chambers.