T.C. Memo. 2000-286


UNITED STATES TAX COURT


CC&F WESTERN OPERATIONS LIMITED PARTNERSHIP, CC&F INVESTORS,
INC., TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent


Docket No. 544-98.                    Filed September 8, 2000.


William F. Nelson and Peter J. Genz, for petitioner.

Dana E. Hundrieser and Lawrence C. Letkewicz, for

respondent.


MEMORANDUM OPINION

COHEN, Judge:  Respondent issued a Notice of Final

Partnership Administrative Adjustment (FPAA) for 1990 for CC&F

Western Operations Limited Partnership (Western).  CC&F

Investors, Inc. (petitioner), the designated tax matters partner

for Western, filed a Petition for Readjustment of Partnership

Items Under Code Section 6226. After concessions, the sole remaining issue is whether disclosures made in the 1990 Federal income tax returns of Western and of partnerships in which Western owned interests were adequate to apprise respondent of the nature and amount of omitted items and, thereby, to preclude the application of the 6-year period of limitations under section 6229(c)(2). This issue is before the Court on cross-motions for summary judgment pursuant to Rule 121. The record shows, and the parties agree, that there is no genuine issue of material fact. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Western is a Delaware limited partnership whose principal place of business was Boston, Massachusetts. Petitioner is a corporation organized under Delaware law.

Western's sole activity was selling, to a third-party buyer, Western's 84-percent partnership interests in CC&F Bellevue Office Investment Co. (Bellevue), CC&F Cabot Plaza II Investment Co. (Cabot Plaza), CC&F Chatsworth Investment Co. (Chatsworth), CC&F Diamond Bar Investment Co. (Diamond Bar), CC&F Issaquah I Investment Co. (Issaquah), CC&F Mira Loma Investment Co. (Mira Loma), and CC&F Topanga Investment Co. (Topanga); Western's

99-percent partnership interests in CC&F Vacant Land Associates I (Vacant Land I), CC&F Vacant Land Associates II (Vacant Land II), CC&F Vacant Land Associates III (Vacant Land III), CC&F Vacant Land Associates IV (Vacant Land IV), and CC&F Vacant Land Associates V (Vacant Land V); and 100 percent of the outstanding stock of CC&F Stadium Properties, Inc. (Stadium). The sale occurred in two phases, the first on March 28, 1990, and the second on April 26, 1990. The agreement with the third-party purchaser required that the underlying property of each partnership be free and clear of all debt following the closing. Thus, a portion of the proceeds paid into escrow was applied to pay off all debt at the closing of the sale.

On October 15, 1991, petitioner timely filed for Western a Form 1065, U.S. Partnership Return of Income, for 1990. Petitioner incorrectly reported a section 1231 loss of $3,196,339 from the sale of the partnership interests. The sale of Stadium stock was listed separately. The reported loss from the sale of the partnership interests was based on a reported amount realized of $27,965,551 and basis of $31,161,890. However, the sale actually resulted in an aggregate net gain of $9,182,216.

The partnerships that were sold by Western also filed tax returns for 1990. Except for Bellevue, each partnership that was conveyed included a statement with its return as follows:

The above named partnership entity was terminated under Regulation Section 1.708-1(b)(ii) on [date of sale] when both the 84% [99% for Vacant Lands I through V], CC&F Western Operations, L.P. (Federal Identification Number 59-2994986), and the 16% [1% for Vacant Lands I through V] partner sold their entire interests in the partnership to an unrelated party.

Bellevue did not identify itself as having been sold to an unrelated third party during 1990. Each partnership that was conveyed attached, to its Federal income tax return, a Schedule K-1 for each of its partners. On line B of the 12 Schedules K-1 of Western, the partnerships listed Western's share of partnership liabilities in the following amounts:

| | |
|---|---|
| Bellevue | $ 7,657,419 |
| Cabot Plaza | 0 |
| Chatsworth | 23,552,592 |
| Diamond Bar | 8,846,254 |
| Issaquah | 4,960,496 |
| Mira Loma | 0 |
| Topanga | 11,000 |
| Vacant Land I | 10,337,621 |
| Vacant Land II | 2,935,574 |
| Vacant Land III | 298,884 |
| Vacant Land IV | 1,866,711 |
| Vacant Land V | 9,492,939 |
| Total | $69,959,490 |

Neither the 1990 Federal income tax return of Western nor the returns of the partnerships that were conveyed disclosed that the third-party purchaser paid or assumed Western's liabilities.

On October 14, 1997, more than 3 years but less than 6 years from the date of filing of Western's return, respondent sent the FPAA to petitioner, determining that there was unreported gain on the sale of the partnership interests.

## Discussion

Under the general rule set forth in section 6501, the Internal Revenue Service is required to assess tax or send a notice of deficiency within 3 years after a Federal income tax return is filed. See sec. 6501(a). In the case of a tax imposed on partnership items, however, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501 in situations where the partnership tax return was filed later than an individual partner's return. See sec. 6501(o)(2); Rhone-Poulenc Surfactants & Specialties v. Commissioner, 114 T.C. 533, 540 (2000).

Section 6229 provides in pertinent part:

SEC. 6229(a). General Rule.--Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of--

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

 *    *    *    *    *    *    *

(c) Special Rule in Case of Fraud, Etc.--

 *    *    *    *    *    *    *

(2) Substantial omission of income.--If any partnership omits from gross income an amount

> properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return, subsection (a) shall be applied by substituting "6 years" for "3 years".

Section 6229, like other statutes of limitation, receives strict construction in favor of the Government when taxpayers seek to have it applied to bar the Government's rights.  See <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 391 (1984); <u>E.I. Du Pont De Nemours & Co. v. Davis</u>, 264 U.S. 456, 462 (1924); <u>Rhone-Poulenc Surfactants & Specialties v. Commissioner</u>, <u>supra</u> at 540.

In drafting section 6229, Congress did not intend to create a completely separate statute of limitations for assessments attributable to partnership items.  See <u>Rhone-Poulenc Surfactants & Specialties v. Commissioner</u>, <u>supra</u> at 545.  Instead, section 6229 merely supplements section 6501, and, although section 6229 does not repeat all of the terms and provisions already set forth in section 6501, the adequate disclosure provision of section 6501(e)(1)(A)(ii) is encompassed in section 6229(c)(2).  Consequently, the precedents interpreting section 6501(e)(1)(A)(ii) are equally applicable to section 6229(c)(2).  Section 6501(e)(1)(A)(ii) states:

> (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the <u>nature and amount</u> of such item.  [Emphasis added.]

Petitioner contends that the 1990 Federal income tax return and the Federal income tax returns of the partnerships that were conveyed supplied respondent with a clue as to the nature and amount of gain that was omitted from the Western return, and, thus, the 6-year period of limitations under section 6229(c)(2) does not apply.  Petitioner concedes that the omitted gain from the sale of the partnership interests exceeds 25 percent of the amount of gross income stated in the 1990 Federal income tax return of Western.

Respondent argues that neither the 1990 return nor the returns of the partnerships that were conveyed provide adequate disclosure, and, therefore, the 6-year period of limitations is applicable.  Respondent concedes that the Federal income tax returns of the partnerships that were conveyed should be considered along with the 1990 tax return of Western for purposes of determining whether an adequate disclosure has been made.  See Walker v. Commissioner, 46 T.C. 630, 637-638 (1966).

In Colony, Inc. v. Commissioner, 357 U.S. 28, 37 (1958), the Supreme Court, although interpreting section 275(c), I.R.C. 1939, the predecessor of section 6501(e), specifically stated that the result that it reached is in harmony with the language of section 6501(e)(1)(A):

> We think that in enacting section 275(c) Congress manifested no broader purpose than to give the Commissioner an additional 2 years [now 3] to

investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. * * *  [Id. at 36; emphasis added.]

This Court has held that, in setting out the "clue" standard, the Supreme Court did not mean a clue sufficient to intrigue the likes of Sherlock Holmes, or a clue that involved a detailed revelation of each and every underlying fact. See Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971). Disclosure of omitted material can be adequate without disclosing exact dollar amounts. See University Country Club, Inc. v. Commissioner, 64 T.C. 460, 470 (1975). The proper application of the rule is whether the need for an adjustment is "reasonably" apparent from the face of the Federal income tax return. See id. at 471.

The 1990 Federal income tax return of Western informed respondent that a sale of partnership interests had occurred and that petitioner had used an amount realized equal to $27,965,551 in reporting gain. Petitioner claims that statements in the returns for the partnerships that were conveyed clearly disclose that Western, at the time of sale, was liable for $69,959,490 of combined debt. Petitioner argues that, because payment or

assumption of debt by a purchaser is includable in the amount realized, respondent should have been on notice that the actual amount realized might be equal to or greater than the debt of Western, and, therefore, was understated by at least $41,993,939 in the calculation of the loss on the Federal income tax return.

Petitioner's argument assumes that it is reasonable to expect an agent for the Internal Revenue Service to sort through 12 unique and different partnership tax returns to find each Schedule K-1 issued specifically for Western, and to tally all of Western's nonrecourse and other liabilities. Petitioner's argument then assumes that an agent should be able to compare the amount of liabilities to the disclosed amount realized on the Federal income tax return of Western, and glean from that comparison that the amount realized is understated by the difference between the total liabilities listed on the Schedules K-1 and the amount reported on the return of Western. Petitioner's argument surpasses the bounds of reasonableness. The purpose behind the adequate disclosure doctrine is to allow the Commissioner an extra 3 years to assess a deficiency in situations where a taxpayer's failure to report income puts the Commissioner at a special disadvantage in detecting errors. See Colony, Inc. v. Commissioner, supra at 36. The omission in this case created just that type of disadvantage. Presumably even the sophisticated preparers of the returns, who were familiar with

the details of the transactions, did not recognize that substantial income was omitted.

Colony, Inc. v. Commissioner, supra, upon which petitioner relies heavily, does not support petitioner's arguments. Colony involved the interplay between "gross receipts" and "gross income". All of the receipts of a sale of real property had been disclosed, but cost of goods sold had been overstated. Under these circumstances, the Supreme Court held that there was not an omission from gross income within the meaning of the applicable statute because, in computing the 25-percent threshold, Congress intended omission of gross income to refer to an understatement of amount realized rather than net gain. See id. at 1038.

Our holding is consistent with the decision of this Court in Estate of Knox v. Commissioner, T.C. Memo. 1961-129, revd. on another issue 323 F.2d 84 (5th Cir. 1963). In Estate of Knox, a corporation owning real property was liquidated, and the assets were distributed to the shareholders. Because an election was not filed within 30 days after the adoption of the plan of liquidation, the distribution that was received by the shareholders should have been reported as income on their individual tax returns. The taxpayer, a 60-percent shareholder, failed to include the distribution in income. The taxpayer failed to report that the corporation had been liquidated on her income tax return but attached a schedule claiming that the

taxpayer had acquired a 60-percent interest in real property and was entitled to a depreciation deduction for 60 percent of the improvements.  The Commissioner sent a notice of deficiency after the expiration of the 3-year period of limitations.  The taxpayer argued that her reporting of depreciation fully apprised the Commissioner of all of the facts necessary to make a determination of deficiency.  This Court held, however, that such reporting was not adequate because there was no mention of the liquidation of the corporation on the tax return.  See id.

Our holding is also consistent with the opinion of the Court of Appeals in Phinney v. Chambers, 392 F.2d 680 (5th Cir. 1968).  In Phinney, a taxpayer incorrectly claimed a stepped-up basis in her one-half interest in a community-owned installment note issued in exchange for stock.  The full value of the note had been included in the estate of her deceased husband for estate tax purposes.  When the note was paid in full, the taxpayer reported, on her individual income tax return, that the amount collected was a sale of stock with an amount realized equal to basis.  When the Commissioner disallowed the stepped-up basis, more than 3 years but less than 6 years after the taxpayer filed her return, the taxpayer argued that she had adequately disclosed the transaction on her Federal income tax return.  The Court of Appeals held that the taxpayer had not given the Commissioner a chance to challenge the taxpayer's contentions, because the

taxpayer had failed to mention the stepped-up basis anywhere in the return.  See id. at 684.

Like the taxpayers in Estate of Knox and Phinney, petitioner has failed to provide enough information to allow an examining agent to reasonably identify the underreporting of gain.  In order to qualify for relief under the adequate disclosure exception to section 6229(c)(2), the disclosures on the return have to be more directly related to the omitted income than what was disclosed by petitioner.

We have considered all remaining arguments made by petitioner for a result contrary to that expressed herein, and, to the extent not discussed above, they are irrelevant or without merit.  Respondent's motion for summary judgment will be granted, and petitioner's motion for summary judgment will be denied.

To reflect the foregoing,

An appropriate order and decision will be entered.