**Walter E. HENDRICKS and Dema P. Hendricks, Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 13270.**

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1969.

Decided March 4, 1970.

Charles D. Gray, III, Gastonia, N.C., for appellants.

William L. Goldman, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks and Lester B. Snyder, Attys., Dept. of Justice, on brief), for appellee.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

PER CURIAM:

Appellants seek reversal of a Tax Court decision holding that short-term capital losses of $967,650.60, resulting from short sales of securities in the stock market, were not properly deductible for the taxable year 1963.

During 1963, the taxpayers sold short 3900 shares of Syntex Corporation through their broker, Bache & Co., depositing sufficient cash and securities with Bache to meet established margin requirements for short sales. The price of the stock continued to rise, however, and on December 26, 1963, Bache issued a call for additional margin. The taxpayers, unable or unwilling to post the additional margin of $380,000, directed

Bache to purchase sufficient shares to close out their entire short position.

The cost of purchasing the Syntex shares was irrevocably fixed by December 31, 1963, but the settlement dates for the transactions were January 3 and 6, 1964, four business days after the respective purchases. It was not until those dates that the purchased Syntex shares were delivered to Bache and in turn delivered by Bache to the party from whom the necessary stock had been borrowed at the time of the original short sales.

█ In their joint return for the taxable year 1963, the taxpayers reported the loss of the $967,650.60 resulting from the short sales of Syntex stock. The Commissioner issued a notice of deficiency, determining that the short sale losses should not be taken into account until the taxable year 1964, when the actual delivery of the shares to cover the short sale took place.

The consistent position of the Commissioner has been that a short sale is not consummated or closed, for income tax purposes, until delivery of the shares to cover the short sale. For that proposition he relies on a long-standing administrative practice and line of judicial decisions as well as Treas.Reg. § 1.-1233–1(a). That Regulation provides that:

(1) For income tax purposes, a short sale is not deemed to be consummated until delivery of property to close the short sale.

\*     \*     \*     \*     \*     \*

(4) \* \* \* If the short sale is made through a broker and the broker borrows property to make a delivery, the short sale is not deemed to be consummated until the obligation of the seller created by the short sale is finally discharged by delivery of property to the broker to replace the property borrowed by the broker.

Taxpayers on the other hand contend that the loss became ascertainable and irrevocably fixed by the end of December, 1963 and for that reason should be taken into account in that year. The Regulation, we are told, is not apposite, since it speaks only to the problem addressed by section 1233 of the 1954 Code, that is, whether a gain or loss from a short sale is capital or ordinary, and if capital, whether it is short-term or long-term.

The Tax Court upheld the Commissioner and adopted a reading of the Regulation which would make it apply according to its literal terms, "for income tax purposes" generally rather than for purposes of section 1233 only. In reaching that result the Tax Court explained the Commissioner's position and the rationale behind the rule. The short sale transaction is fundamentally different from the long sale, because "in the case of the short sale the seller has some flexibility until the short position is closed by delivery of the covering stock. \* \* \* [P]rior to that time stock ordered to be bought for the purpose of covering the short sale could be retained as long stock if, for example, the short seller should furnish the broker with enough money or securities to provide for the purchase of the stock and to meet necessary margin requirements." A trader may retain long and short positions in a stock at the same time.

We originally decided this case on July 9, 1969. At that time we affirmed the Tax Court on its opinion, but also implied that the result rested on our view that the court below had made a finding that these "taxpayers had the option of using the purchased shares to retain a long position in syntex stock, with a view to buying additional shares later to cover their short position." In their petition for rehearing, taxpayers pointed out, accurately, that the evidence adduced on the point in this case was ambiguous and would not necessarily support such a finding. Accordingly, after the Government declined an opportunity to respond specifically to the petition, we withdrew our initial opinion and remanded to the Tax Court "for an express finding as to whether Taxpayers actually had the option of using the

purchased shares to retain a long position in Syntex stock." We further ordered that "the appeal will abide the determination of that issue."

In its supplemental proceedings, the Tax Court, apparently somewhat bewildered by our action, was not lead to a categorical answer as a result of taking additional testimony. After an analysis of the pertinent house rules and practices of the broker, the Rules of the Stock Exchange in regard to margin requirements, and the right of a member to waive certain requirements at the customer's request, the court stated:

> If the word "option" as used in the order of the Court of Appeals means an unqualified right of the petitioners to use the purchased shares to retain a long position in Syntex stock upon meeting all margin requirements, the petitioners had no such option, since a waiver by Bache of its house rule would be required. If the word "option" means a possibility that Bache would have consented to a waiver of its house rule and permitted the petitioners to use the purchased shares to retain a long position in Syntex stock upon meeting all margin requirements, the petitioners did have such an option. We make no finding as to whether Bache, upon request, would have consented to a waiver of its house rule, but find that the record fails to disclose any impelling reason for denying such a request.

The case has now returned to us for final disposition. Nothing in the most recent Tax Court proceedings persuades us to disturb the result originally reached. However, for guidance in future cases and in the interest of certainty in the tax law, it is necessary to elaborate briefly on the correct ground for decision.

█ Somewhat to our embarrassment we now frankly confess that our decision to remand was a mistake. We had confused the purpose of the applicable rule with the evidence (or lack of it) in the case, and taxpayers exploited our error.

We are now of the view that the case should have been decided under Reg. § 1.1233–1. The Tax Court was correct in rejecting the limited construction of the Regulation suggested by taxpayers. Doyle v. Commissioner, 286 F.2d 654 (7th Cir. 1961). The rule, given broad effect, is not unreasonable considering the nature of a short sale—in which there is in most cases flexibility until delivery. It was intended to provide a readily recognizable answer in the entire category of short-covering transactions and to obviate the necessity of engaging in case by case factual explorations of the kind we mandated here. The pointless result of the inquiry we ordered illustrates the futility of this additional step. Moreover, the Regulation embodies what has long been understood to be the law. Richardson v. Commissioner, 121 F.2d 1 (2nd Cir. 1941), *cert. denied*, 314 U.S. 684, 62 S.Ct. 188, 86 L.Ed. 548 (1941); Klinger v. Commissioner, 8 T.C.M. 546 (1949).

The judgment of the Tax Court is Affirmed.