## In the

## United States Court of Appeals

### For the Seventh Circuit

No. 09-3741

KENNETH H. BEARD and SUSAN W. BEARD,

*Petitioners-Appellees,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant.*

Appeal from
the United States Tax Court.
No. 13372-06

ARGUED SEPTEMBER 27, 2010—DECIDED JANUARY 26, 2011

Before ROVNER, EVANS, and WILLIAMS, *Circuit Judges*.

EVANS, *Circuit Judge.* This case presents the seemingly simple question of whether an overstatement of basis in ownership interests is an omission of income under the Internal Revenue Code Section 6501(e)[1], thereby triggering a six-year, rather than the standard three-year,

---

[1] Unless otherwise noted, all citations to the Internal Revenue Code are to the 1954 Code.

statute of limitations. But things are not always as they appear—the answer to the seemingly simple question requires a rather lengthy discussion of a case decided more than a half-century ago, in 1958, the year Elvis Presley was inducted into the army.

At issue here is a variant on a Son-of-BOSS (Bond and Option Sales Strategy) transaction, a type of abusive (so says the government) tax shelter that was popular a few years back. On the other side of this dispute, Kenneth and Susan Beard give the transaction a much more benign handle calling it simply "a tax advantaged transaction." We think the government's characterization is closer to the mark.

In a Son-of-BOSS transaction, an individual uses a short sale mechanism to artificially increase his basis in a partnership interest prior to selling the interest, thereby limiting his capital gains tax on the sale. A short sale is a "sale in which an investor sells borrowed securities in anticipation of a price decline and is required to return an equal number of shares at some point in the future." http://www.investopedia.com/terms/s/shortsale.asp (last visited Jan. 5, 2011). As such, a short sale produces proceeds from the sale of the shares as well as an outstanding liability in the amount of the number of borrowed shares multiplied by the current price per share. This liability disappears when the short is closed out, and the hope of the usual short seller is that between the time he borrows the shares and the time he closes out the short, the price per share will have dropped so that he makes more selling the borrowed shares up front

than he spends later to replace them. The tax gain or loss recognition in a short sale is delayed until the seller closes the sale by replacing the borrowed property. *Hendricks v. Commissioner of Internal Revenue*, 51 T.C. 235, 241 (1968), *aff'd* 423 F.2d 485 (4th Cir. 1970).

Short selling is often a way to hedge against the market, but a Son-of-BOSS transaction relies on the delayed tax recognition of a short sale for a gamble of a different kind. In Son-of-BOSS, the taxpayer contributes the proceeds of the short and the corresponding obligation to close out the short to another legal entity in which he has ownership rights (usually a partnership). The taxpayer (or, perhaps more accurately, the tax-avoider) then sells his rights in the partnership, claiming an inflated outside basis in the partnership corresponding to the amount of the transferred proceeds without an offsetting basis reduction for the transferred liability. This is advantageous for the taxpayer because the capital gains tax on such a transaction is calculated by subtracting the outside basis from the amount recognized in the sale of the ownership rights, so a higher outside basis means lower capital gains tax and more money in the pocket of the taxpayer. Therefore, the gamble in the Son-of-BOSS transactions was that the participant could legally increase his outside basis in a partnership by not reporting the offsetting transferred contingent liability of the short position on his tax return.

In 2000, the IRS issued Notice 2000-444, effectively invalidating future Son-of-BOSS transactions, and courts

began to invalidate these transactions as lacking economic substance. Bernard J. Audet, Jr., *One Case to Rule Them All: The Ninth Circuit in* Bakersfield *Applies* Colony *to Deny the IRS An Extended Statute of Limitations in Over-statement of Basis Cases*, 55 Villanova Law Review 409, 411-12 (2010). In 2004, the IRS offered a settlement initiative to approximately 1,200 identified taxpayers, but that left a large number of taxpayers who did not qualify or who had not yet been identified as taking part in a Son-of-BOSS transaction. *Id.* at 412.

With this in mind, we turn to the facts of this case. In 1999, Kenneth Beard participated in a short sale of U.S. Treasury Notes, recognizing cash proceeds of $12,160,000. Beard used these proceeds to buy more Treasury Notes in two transactions of $5,700,000 and $6,460,000. He then transferred these Treasury Notes to two companies in which he was majority owner, MMCD, Inc. and MMSD, Inc., respectively, along with the obligation to close out the short positions. On that same day, MMCD and MMSD sold these Treasury Notes and closed out the short positions for $7,500,000 and $8,500,000, respectively. Beard then sold his ownership interests in the two companies.

On their 1999 tax return, the Beards reported long-term capital gains of $413,588 and $992,748 from the sale of the MMCD and MMSD stock, respectively. They arrived at these numbers by subtracting bases of $6,161,351 and $6,645,463 from the sale prices of $6,574,939 and $7,638,211. The Beards also reported gross proceeds from the sale of Treasury Notes of $12,125,340,

a cost basis of $12,160,000, and a resulting net loss of $34,660. The high bases in MMCD's and MMSD's stock resulted from the asymmetric treatment of the short sale transactions—Beard had increased his outside bases in the companies by the amount of the short sale proceeds contributed to each company, but had not reduced the bases by the offsetting obligation to close the short positions. The 1999 tax returns of MMCD and MMSD did not indicate that these S-corporations had assumed the liability to cover the short positions.

In 2006, almost six years after the Beards filed their 1999 tax return, the IRS issued a notice of deficiency, reducing the Beards' bases in the MMCD and MMSD stock by the amount of the transferred Treasury Notes, and thereby increasing the Beards' taxable capital gains on the sales of the companies by $12,160,000. The Beards contested this deficiency in tax court, and, rather than disputing the facts, moved for summary judgment on the grounds that overstatement of basis is not an omission from gross income for the purpose of the extended six-year statute of limitations under Section 6501(e) of the Code, and so the IRS was out of luck as the notice of deficiency came too late. The tax court agreed and granted summary judgment, finding that the principles of *Colony, Inc. v. Commissioner of Internal Revenue*, 357 U.S. 28 (1958), applied in this case. The Commissioner of the Internal Revenue Service appeals. We review the tax court's decision *de novo*. *See Bell Federal Savings & Loan Ass'n v. Commissioner of Internal Revenue*, 40 F.3d 224, 226 (7th Cir. 1994).

Although decided after the 1954 revisions, *Colony* (which was decided in 1958) interprets Section 275(c) of the 1939 Code, the predecessor to current Section 6501(e)(1)(A). Section 275(c) allowed for a five-year statute of limitations for tax assessment, rather than the normal three-year limit, in cases where "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." Essentially the same language is found in current Section 6501(e)(1)(A), although the extended statute of limitations is now six years, rather than five.

The taxpayer in *Colony* was a real estate company which understated its business income from selling residential lots by erroneously including unallowable items of development expense in the calculation of the lots' bases. *Colony*, 357 U.S. at 30. In finding that the overstatement of basis was not an omission from gross income that triggered the longer statute of limitations, the Court noted that although "it cannot be said that the [statutory] language is unambiguous," the legislative history of Section 275(c) provides "persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id*. at 33.

After reviewing the legislative history, the Court believed that Congress' purpose was to provide extra time to investigate tax returns in cases where "because of a

taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item." *Id.* at 36. Finally, the Court concluded that "the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954." *Id.* at 37. The question facing us then is: Was the tax court correct to apply the principles of *Colony* to this dispute involving the 1954 Code?

The question has been addressed by multiple federal courts, with differing results. Some have found that *Colony* does not apply and an overstatement of basis can be an omission from gross income. *See, e.g., Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968); *Home Concrete & Supply, LLC v. United States*, 599 F. Supp. 2d 678 (E.D. N.C. 2008), *appeal docketed*, No. 09-2353 (4th Cir. Dec. 9, 2009); *Burks v. United States*, 2009 WL 2600358 (N.D. Tex. June 13, 2008), *appeal docketed*, No. 09-11061 (5th Cir. Oct. 26, 2009); *Brandon Ridge Partners v. United States*, 100 A.F.T.R. 2d 2007-5347, 2007 WL 2209129 (M.D. Fla. Jul. 30, 2007). Others have found that *Colony* does apply and an overstatement of basis is not an omission of gross income. *See, e.g., Salman Ranch Ltd. v. United States,* 573 F.3d 1362 (Fed. Cir. 2009); *Bakersfield Energy Partners LP v. Commissioner of Internal Revenue*, 568 F.3d 767 (9th Cir. 2009); *Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505 (2007), *appeal docketed*, No. 2008-5090 (Fed. Cir. June 27, 2008). Although it is clearly a contentious issue and a close call, the plain meaning of the Code and a close reading of *Colony* lead us to the conclusion that, given

the changes to Section 6501(e)(1)(A), *Colony* does not control here and an overstatement of basis can be treated as an omission from gross income under the 1954 Code.

Although, as we have mentioned, the language of Section 275(c) is essentially duplicated in Section 6501(e)(1)(A), the new section also has two additional subsections. They read:

> (i) in the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to the diminution by the cost of such sales or services;

> and

> (ii) in determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Therefore, it appears that subsection (i) addresses the situation faced by the Court in *Colony* where there is an omission of an actual receipt or accrual in a trade or business situation, while subsection (ii) provides a safe-harbor for improperly completed returns where the return on its face still provides a "clue" to the omitted amount. Could the Court have been referring to this

synchronicity with subsections (i) and (ii) when it con-
cluded that its interpretation of legislative history gave
the "ambiguous" Section 275(c) a meaning harmonious
with that of "unambiguous" Section 6501(e)(1)(A)?

The *Salman Ranch* majority says no, stating, "We are
not prepared to conclude—based simply upon the
Court's reference to ambiguity in § 275(c) and the
lack thereof in § 6501(e)(1)(A)—that the Court's facially
unqualified holding nevertheless carries with it a quali-
fication." *Salman Ranch*, 573 F.3d at 1373. We disagree.
We think the dissent said it better:

> My colleagues on this panel hold that *Colony* requires
> that an erroneous overstatement of basis can never
> serve to extend the period of limitations. That is an
> unwarranted enlargement of the holding in *Colony*. In
> *Colony* the taxpayer reported its gross receipts as a
> developer and seller of real property . . . .

*Id.* at 1380 (Newman, J., dissenting). In other words,
*Colony*'s holding is inherently qualified by the facts of the
case before the Court, facts which differ from our case,
where the Beards' omission was not in the course of
trade or business.

The *Salman Ranch* dissent then suggests, as do we, and as
did the Fifth Circuit in *Phinney*, that subsection (ii) is on
all fours with *Colony*'s suggestion that Congress' intention
in enacting the longer time period was to give the IRS
a fighting chance in situations where the taxpayer's
return doesn't provide a clue to the omission. *Id.*;
*Phinney*, 392 F.2d at 685. Said the *Phinney* court:

> [w]e conclude that the enactment of subsection (ii) as part of section 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an *item* of *income* of the requisite amount or misstating of the nature of an item of income which places the "commissioner . . . at a special disadvantage in detecting errors."

392 F.2d at 685 (quoting *Colony*, 357 U.S. at 36). We believe that distinguishing *Colony* as the *Phinney* court did does not "[overread] *Colony*'s brief references to Section 6501(e)(1)(A)," but rather that the facts of *Colony* and the changes from the 1939 to the 1954 Code must distinguish our case from *Colony*; "a fair reading of *Colony*," suggests that the Court was aware of as much. *Bakersfield*, 568 F.3d at 778. Therefore, we take the view that *Colony* is not controlling here.

We are now left without precedential authority and must return to the text of Section 6501(e)(1)(A) to determine whether the three-year or six-year limit should apply to the Beards' case.

> Congress did not change the language in the body of § 6501(e)(1)(A), which is identical to the language in § 275(c) that the Supreme Court construed in *Colony*. As a general rule, we construe words in a new statute that are identical to words in a prior statute as having the same meaning. We therefore interpret § 6501(e)(1)(A) in light of *Colony*.

*Bakersfield*, 568 F.3d at 775-76 (internal citations omitted). However, in so interpreting, we must bear in mind that

Congress did add subsections (i) and (ii) to Section 6501(e)(1)(A) and that the section as a whole should be read as a gestalt.

Although *Colony* found the language of Section 275(c) to be ambiguous, the Court did feel that "the statute on its face lends itself more plausibly to the taxpayer's interpretation." *Colony*, 357 U.S. at 33. The Court considered the Commissioner's argument that use of the word "amount" rather than, for example, "item," suggests a concentration on a quantitative aspect of the error, an argument which it believed was bolstered if one "touches lightly on the word 'omits' and bears down hard on the words 'gross income.'" *Id.* at 32. However, the Court found more persuasive the taxpayer's argument that the use of the word "omits," (defined as "to leave out or unmentioned; not to insert, include, or name"), rather than "reduces" or "understates" suggests a limitation of the statute only to situations in which specific receipts or accruals of income items are left out. *Id.* at 32-33.

One key phrase in the statutory language which *Colony* does not address in depth is "gross income" which is defined generally in Section 61 of the Code as "all income from whatever source derived."[2] There is no general definition of gross income found in Section 6501(e)(1)(A), however subsection (i) does provide a special definition of gross income in a trade or business

---

[2] Section 61(a)(3) specifically includes "[g]ains derived from dealings in property" in gross income.

setting. Therefore, for situations not involving trade or business, we think it makes logical sense to use the Code's general gross income definition when reading Section 6501(e)(1)(A).

Using these definitions and applying standard rules of statutory construction to give equal weight to each term and avoid rendering parts of the language superfluous, we find that a plain reading of Section 6501(e)(1)(A) would include an inflation of basis as an omission of gross income in non-trade or business situations. *See Regions Hospital v. Shalala*, 522 U.S. 448, 467 (1997); *Hawkins v. United States*, 469 F.3d 993, 1000 (Fed. Cir. 2006). It seems to us that an improper inflation of basis is definitively a "leav[ing] out" from "any income from whatever source derived" of a quantitative "amount" properly includible. There is an amount—the difference between the inflated and actual basis—which has been left unmentioned on the face of the tax return as a candidate for inclusion in gross income.

Further support for this reading comes from the addition of subparagraph (i). If the omissions from gross income contemplated by Section 6501(e)(1)(A) were only specific items such as receipts and accruals, then the special definition in subsection (i) would be, if not superfluous, certainly diminished. The addition of this subsection suggests that the definition of gross income for the purposes of Section 6501(e)(1)(A) is meant to encompass more than the types of specific items contemplated by the *Colony* holding.

The Ninth Circuit in *Bakersfield* disagrees, saying that the addition of subparagraph (i) does not necessarily cast

the language in the body of Section 6501(e)(1)(A) in a different light, but rather that "we can equally infer that Congress in 1954 intended to clarify, rather than rewrite, the existing law." *Bakersfield*, 568 F.3d at 776. The Ninth Circuit goes on to say:

> In enacting the 1954 Code, Congress was presumably aware of the dispute over the interpretation of § 275(c), and it could have expressly added a definition of "omits" if it wanted to overrule the cases that concluded, as the Supreme Court later did in *Colony*, that "omits" did not include an overstatement of basis. . . . Clarifying that an overstatement of basis is not an omission from gross income in the case of a trade or business does not establish that Congress also intended to alter the general judicial construction of "omits" in all other contexts. Nor has the IRS pointed to any legislative history evincing an intent to alter the law outside the context of a trade or business.

*Id.*

We agree with our colleagues to the west that the additions to the 1954 Code could indeed be seen as clarifications, rather than a rewriting. However, we must quickly part ways, as we don't believe a full rewriting was necessary in order to cast the language of Section 6501(e)(1)(A) in a different light, nor do we believe that Congress needed to redefine "omits" in order to clarify the existing law. We think it is important to remember that the revisions to the 1954 Code predate the decision in *Colony*, and so the law at the time was the

1939 Code and any precedential decisions within the circuits. This means that Congress, when revising the Code, was responding not to a unifying decision such as *Colony*, but rather to the confusion throughout the circuits. We do not find it hard to believe that Congress added subsections (i) and (ii) to Section 6501(e)(1)(A) with the belief that this would clarify a plain reading of the statute and quell the confusion. Indeed, as we explain above, we think the additions did just that.

The same simplicity of statutory construction can be applied to the arguments made in *Bakersfield* and *Salman Ranch*, refuting the superfluity of subsection (i) in the face of those courts' reading of Section 6501(e)(1)(A). This argument, simply put, is that the trade or business definition contained in subsection (i) was not included to clarify what counts as an omission, but rather to clarify the calculation of whether an omission exceeded 25% of gross income. *Salman Ranch*, 573 F.3d at 1375 (quoting *Bakersfield*, 568 F.3d at 776). The Federal Circuit arrives at this conclusion via a deep-dive into legislative history, while the Ninth Circuit wades through a convoluted discussion of numerators and denominators to reach the same place. *Id.*; *Bakersfield*, 568 F.3d at 776-77.

While we are great fans of underwater archaeology, we don't believe our wetsuits are needed at this time. To us, the clear, dry line from the language to the plain meaning of Section 6501(e)(1)(A) is preferable. To say that subsection (i) was included simply to clarify the 25% calculation diminishes the plain meaning of the statute. Certainly, we should be mindful of the applica-

bility of subsection (i) when calculating the 25%, and we should be equally mindful of this subsection and its interplay with the rest of Section 6501(e)(1)(A) and the entirety of the Code when determining what counts as an omission from gross income. Reading Section 6501(e)(1)(A) as a gestalt, the meaning is clear, and an inflation of basis should be considered an omission from gross income such that it triggers the extended six-year statute of limitations.

Much ink has been spilled in the briefs over whether temporary Treasury Regulation Section 301.6501(e)-1T(a)(1)(iii) would be entitled to *Chevron* deference if *Colony* were found to be controlling. This temporary regulation, which was issued without notice and comment at the same time as an identical proposed regulation, purports to offer taxpayers guidance by resolving an open question and stating definitively that in the case of a disposition of property, an overstatement of basis can lead to an omission from gross income. This temporary regulation has since been replaced by a nearly identical final regulation, issued after a notice and comment period. T.D. 9511 (eff. Dec. 14, 2010), 75 Fed. Reg. 78,897. Because we find that *Colony* is not controlling, we need not reach this issue. However, we would have been inclined to grant the temporary regulation *Chevron* deference, just as we would be inclined to grant such deference to T.D. 9511. We have previously given deference to interpretive Treasury regulations issued with notice-and-comment procedures, *see Kikalos v. Commissioner of Internal Revenue*, 190 F.3d 791, 795 (7th Cir. 1999); *Bankers Life and Casualty Co. v. United States*, 142 F.3d 973, 979-84

(7th Cir. 1998), and the Supreme Court has stated that the absence of notice-and-comment procedures is not dispositive to the finding of *Chevron* deference. *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

For the foregoing reasons, the grant of summary judgment by the tax court is REVERSED.