# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2011

Lyle W. Cayce
Clerk

———————

No. 09-11061

———————

DANIEL S. BURKS, Tax Matters Partner of Key Harbor Investment Partners,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

-------------------------------------------------------------------------------------------------

DANIEL S. BURKS, Tax Matters Partner of DJB Investment Partners,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

———————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————

———————

Cons w/ No. 09-60827

———————

No. 09-11061

COMMISSIONER OF INTERNAL REVENUE,

Petitioner

v.

MITA, Partner; JOHN F. LYNCH, A Partner Other Than the Tax Matters Partner

Respondents

---

Appeal from the United States Tax Court

---

Before DeMoss, Benavides, and Elrod, Circuit Judges.

Harold R. DeMoss, Jr., Circuit Judge:

This consolidated appeal requires us to determine whether an overstatement of basis constitutes an omission from gross income for purposes of the Tax Code, 26 U.S.C. § 6501(e)(1)(A), which extends the tax assessment period from three to six years. Because we conclude that an overstatement of basis is not an omission from gross income for purpose of the relevant statute, the Commissioner was limited to three years to pursue unpaid tax claims against the taxpayers. We further find that the recently promulgated Treasury Regulations do not apply to the taxpayers. We thus affirm the tax court's judgment in favor of the taxpayer, and reverse the district court's judgment in favor of the government.

## I.

Appellee United States of America and Petitioner Commissioner of the Internal Revenue Service (IRS) (collectively "the government") assert that Appellants Daniel Burks, M.I.T.A., and John E. Lynch (collectively "taxpayers"

No. 09-11061

or "the taxpayers") utilized the "Son of BOSS"[1] tax shelter to create artificial tax losses in order to offset capital gains. In a Son of BOSS scheme, partners engage in various long and short sale transactions and transfer the resulting obligations to the partnership thereby improperly inflating the basis in the partnership assets. *See e.g., Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1343 (Fed. Cir. 2006) (outlining steps of transactions used to inflate basis in assets). The partners do not reduce the basis by the liabilities assumed by the partnership. *See id*; I.R.S. Notice 2000-44, 2000-2 C.B. 255 (describing prohibited transactions used to create an artificial basis). When basis is overstated, "gross income is affected to the same degree as when a gross-receipt item of the same amount is completely omitted from a tax return." *Colony, Inc. v. Comm'r*, 357 U.S. 28, 32 (1958).

The Tax Equity and Fiscal Responsibility Act of 1982 "established 'a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level.'" *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 446 n.1 (5th Cir. 2008) (quoting *Callaway v. Comm'r*, 231 F.3d 106, 108 (2d Cir. 2000)). Generally, taxes must be assessed and collected within three years of the filing of the tax return. *See* 26 U.S.C. §§ 6501(a), 6229(a). The limitations period is extended to six years when the taxpayer "omits from gross income an amount properly includible therein . . . in excess of 25 percent of the amount of gross income stated in the return." 26 U.S.C. § 6501(e)(1)(A).

In the present cases, the IRS issued Final Partnership Administrative Adjustments (FPPAs) adjusting the partnership tax returns filed by the taxpayers on the grounds that the challenged transactions lacked economic

---

[1] "'BOSS' is an acronym for 'Bond and Option Sales Strategy.'" *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 446 n.2 (5th Cir. 2008). Son of BOSS is an abusive tax shelter that is a "variation of the slightly older BOSS tax shelter." *Id.* (citation omitted).

No. 09-11061

substance.[2] *See Kalmath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537, 543 (5th Cir. 2009) ("The economic substance doctrine allows courts to enforce the legislative purpose of the [Tax] Code by preventing taxpayers from reaping tax benefits from transactions lacking in economic reality."). The FPPAs were filed more than three years but less than six years after the taxpayers' individual tax returns were filed with the IRS. The taxpayers moved for summary judgment before the district court and tax court on the grounds that the government had issued the FPAAs after the expiration of the general three year limitations period for assessing tax against the various partners. In both matters, the government conceded that the three year limitations period had expired but asserted that an extended six year limitations period applied because the partners had omitted gross income in excess of 25% from their tax returns in violation of § 6501(e)(1)(A) when they overstated their basis.

In *United States v. Burks* (09-11061), the district court held that this court's decision in *Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968), established that an overstatement of basis was an omission from gross income for purposes of § 6501(e)(1)(A). The district court thus denied Burks's motion for summary judgment. This court granted Burks permission to file an interlocutory appeal.

In *Commissioner v. M.I.T.A.* (09-60827), the tax court relied on the Supreme Court's decision in *Colony, Inc. v. Commissioner*, 357 U.S. 28, 32 (1958), and cases construing that decision to support its finding that an overstatement of basis did not constitute an omission from gross income for

---

[2] The issue before this court is a purely legal one—whether an overstatement of basis constitutes an omission from gross income for purposes of § 6501(e)(1)(A). The merits of the underlying transactions are not before this court on appeal. The district court and tax court have not yet determined that the taxpayers' reporting positions are unsupportable.

4

No. 09-11061

purposes of § 6501(e)(1)(A). The tax court further found that *Phinney* did not directly address the issue facing the court. Because the tax court held that the three year limitations period applied, it granted the taxpayers' motion for summary judgment. The government timely appealed.

## II.

On appeal, the taxpayers argue that an overstatement of basis does not constitute an omission from gross income as established by the Supreme Court in *Colony v. Commissioner* and thus the three year limitations period applies. The government argues that this court's decision in *Phinney v. Chambers* established that the six year limitations period applies to an overstatement of basis for purposes of § 6501(e)(1)(A). The government contends that *Colony* applies only in the context of a trade or business engaged in the sale of goods or services. The government also argues that application of *Colony* to the revised statute renders § 6501(e)(1)(A) subsections (i) and (ii) superfluous.[3] Finally, the government asserts that recently enacted Treasury Regulations purporting to define "omission from gross income" as encompassing an overstatement of basis are determinative and apply retroactively to the present matters. We consider each in turn.

## A.

This court reviews de novo a court's determination on a motion for summary judgment. *See Staff IT, Inc. v. United States*, 482 F.3d 792, 797 (5th Cir. 2007); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper when "the movant shows that there is no

---

[3] 26 U.S.C. § 6501(e)(1)(A)(i), (ii) has since been amended such that subsections (i) and (ii) now appear at § 6501(e)(1)(B)(i), (ii). There have been no amendments to the text of the subsections and thus the amendments do not affect our analysis. All references to subsections (i) and (ii) are as to the text of the statute prior to the recent amendments in effect at the time of this appeal.

No. 09-11061

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## B.

The taxpayers argue that the Supreme Court's decision in *Colony v. Commissioner*, holding that an overstatement of basis was not an omission from gross income such that the extended limitations period applied, is controlling in the present matters.

In *Colony*, the Court held that an overstatement of basis did not constitute an omission from gross income for purposes of § 275(c) of the 1939 Tax Code, the predecessor to § 6501(e)(A)(1). 357 U.S. at 36. Section 275(c) stated that a five year (now six year) statute of limitations applied when a taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." *Id*. at 29.[4] The taxpayer in *Colony* had understated gross income by overstating the basis in land the taxpayer had sold. *Id*. at 30. The Court began its analysis by focusing on the plain language of the statute. "In determining the correct interpretation of § 275(c) we start with the critical statutory language, 'omits from gross income an amount properly includible therein.'" *Id*. at 32.

---

[4] 26 U.S.C. 275 stated in relevant part:

> (a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

> (c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

*Colony, Inc. v. Comm'r*, 357 U.S. 28, 29 n.1 (1958).

No. 09-11061

The taxpayers argued that the term "omits" was commonly defined as "to leave out or unmentioned; not to insert, include, or name" and thus by the plain language of the statute only the complete omission of an item of income triggered application of the extended limitations period. *Id*. at 32-33. The Court stated it was "inclined" to agree with the taxpayers' argument, however it held that "it cannot be said that [§ 275(c)] is unambiguous" and turned to the legislative history of the statute. *Id*. at 33.

The court found "in that history persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id*. The Court thus found that the extended limitations period did not apply where gross receipts had been reported, despite gross income having been under-reported. *Id*. The Court concluded:

> We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting 'gross income' or one, such as overstated deductions, affecting other parts of the return.

*Id*. at 36.

7

No. 09-11061

The government asserts that this court's decision in *Phinney v. Chambers* limited *Colony*'s holding requiring an actual omission of income pursuant to the plain meaning of the term "omits," because the revised statute § 6501(e)(1)(A)(ii) established adequate disclosure as the critical factor when determining whether there was an omission from gross income. *See Grapevine Imps., Ltd. v. United States*, 77 Fed. Cl. 505, 509 (2007) ("In the wake of *Colony*, a judicial debate erupted over whether the 1954 version of [S]ection 6501(e)(1)(A) is triggered only where an item of income is entirely omitted from a return.").

In *Phinney*, this court was tasked with determining whether misreporting the nature of an item on a tax return constituted an omission from gross income for the purposes of § 6501(e)(1)(A).  392 F.2d at 681-83. The transaction at issue in *Phinney* involved the sale of community property owned by the taxpayer and her deceased spouse. *Id*. at 681. The taxpayer and her spouse each owned a 50% share in a note for stock, which had been sold under an installment plan. *Id*. at 681. The taxpayer and the fiduciary of the deceased taxpayer's spouse each filed tax returns. *Id*. at 681-82. The spouse's tax return reported a gain from the sale of the stock and correctly listed the transaction as an installment sale. *Id*. The taxpayer's tax return incorrectly listed the installment sale transaction as the sale of a stock and reported no gain or loss. *Id*. at 682.

The question before the court was whether the taxpayer omitted from gross income an "amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." *Id*. at 683 (citation omitted). Focusing on the item reported, *Phinney* found that the nature of the item was misrepresented such that there was no adequate disclosure of the transaction. *Id*. at 684. "The basic difficulty with the taxpayer's position here is that [the] taxpayer simply didn't give the government a chance to make a 'challenge' to the taxpayer's contention, because the taxpayer made no such contention on the return it filed." *Id*. The taxpayer's return reported an

No. 09-11061

installment sale "under a different heading and under an incorrect designation." *Id*.

Citing to *Colony*, the court held that there was "[n]o better illustration" for the need for adequate disclosure as required in § 6501(e)(1)(A)(ii). *Id*. at 685.

> [T]he enactment of [§ 6501] subsection (ii) . . . makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or misstating the nature of an item of income which places the commissioner at a special disadvantage in detecting errors.

*Id*. (internal marks omitted). The court concluded that "if an item of income is shown on the face of the return or an attached statement that is not shown in a manner sufficient to enable the [S]ecretary by reasonable inspection of the return to detect the errors then it is the omission of 'an amount' properly includable in the return." *Id*.

We do not read *Phinney* as limiting *Colony*'s holding.[5] In *Colony*, the court noted that its conclusion was "in harmony with the unambiguous language of § 6501(e)(1)(A)." 357 U.S. at 37. A fair reading of *Colony* and *Phinney* supports our finding that both an actual omission of an amount from the tax return or a fundamental misstatement of the nature of an item reported in a tax return that places the Commissioner at a disadvantage in detecting the error may result in application of the extended limitations period. *See id*; *Phinney*, 392 F.2d at 685 ("[T]he six year statute is intended to apply where there is either a complete *omission of an item* of income . . . or *misstating of the nature of an item* of income

---

[5] The Seventh Circuit in *Beard* incorrectly read our decision in *Phinney* as limiting *Colony*'s holding. *See Beard v. Comm'r*, – F.3d –, No. 09-3741, 2011 WL 222249, at *4-5. (7th Cir. Jan. 26, 2011) As discussed above, the Seventh Circuit failed to note the distinct factual pattern presented in *Phinney*, where the taxpayers had misstated the very nature of the item so that the IRS would not have had any reasonable way of detecting the error on the tax return. That is not the case here.

which places the [C]ommissioner at a special disadvantage in detecting errors.")
(internal mark omitted) (emphasis added). The holdings in both cases support
the underlying purpose of the Code: to provide the IRS with additional time to
detect errors or omissions when the nature of the omission places the
"government at a special disadvantage." *See Taylor v. United States*, 417 F.2d
991, 993 (5th Cir. 1969) ("[Section 6501(e)(1)(A)] provides that an item of income
is 'omitted' if the item is not shown in a manner sufficient to enable the
Government, upon a reasonable inspection, to detect the error. . . . [T]he
Government is not to be penalized by a taxpayer's failure to reveal the facts.").

The facts in *Phinney* demonstrate that the taxpayer's return did not
merely misstate an amount but rather misrepresented the very nature of the
item reported such that the IRS could not have reasonably known what was
actually being reported, an almost direct omission. *Phinney*, 392 F.2d at 684. We
hesitate to read *Phinney* as applicable to a misstatement of an amount of income
when the nature of the item is correctly reported because the error arguably
qualifies as an "omission" in that it omits the truth or accuracy of the amount
reported. Such a result renders the general three year limitations period
meaningless.

*Phinney* involved a distinct fact pattern not presented in this appeal. The
taxpayers in the present matters did not misstate the nature of an item such
that the IRS was at a disadvantage in detecting the error because it could not
reasonably know what was actually being reported. Rather, the nature of the
item—the basis—was included in the tax return, albeit in an incorrect amount.
This circumstance provides the IRS with sufficient notice to inquire into the
correctness and validity of the item being reported. *See Colony*, 357 U.S. at 36
(finding that the extended limitations period applies when "the return on its face
provides no clue to the existence of the omitted item"). Absent a fundamental
alteration to the nature of the item reported, disclosure of the item, despite the

No. 09-11061

correctness of the amount, provides the IRS with reasonable notice of the item being reported and the general limitations period should apply pursuant to *Colony*.

Our holding is consistent with other courts' analysis regarding the applicability of *Colony* in the context of Son of BOSS tax shelters. These courts have generally found that an overstatement of basis does not constitute an omission from gross income for purposes of  § 6501(e)(1)(A) such that the extended limitations period applied, because of the similarity of the language and meaning of § 275(c) and § 6501(e)(1)(A). *See, e.g., Home Concrete & Supply, LLC v. United States (Home Concrete II)*, — F.3d —, No. 09-2353, 2011 WL 361495, *5 (4th Cir. Feb. 7, 2011) (finding that because the legislative history of § 275(c) is "equally compelling" with respect to § 6501(e)(1)(A) and that because there are no material differences in the language of the statutes, "we are not free to construe an omission from gross income as something other than a failure to report "some income receipt or accrual") (quotations omitted); *Salman Ranch Ltd v. United States (Salman Ranch II)*, 573 F.3d 1362, 1373-74, 1377 (Fed. Cir. 2009) (finding that "[t]he meaning of 'omits' in today's parlance appears to be no different than its meaning at the time of the *Colony* decision" and further noting that in the years since *Colony* had been decided Congress had not indicated that its holding was inapplicable to the revised statute despite ongoing debate surrounding the decision); *Bakersfield Energy Partners, LP v. Comm'r*, 568 F.3d 767, 771-72 (9th Cir. 2009) (finding that the 1939 Code was so substantially similar to the 1954 Code that *Colony* was controlling); *UTAM, Ltd. v. Comm'r*, 98 T.C.M. (CCH) 422, at *3 (2009) (rejecting the government's reliance on *Phinney* because under the facts before it the Commissioner was not at a disadvantage in "identifying the error in the reporting of the transaction" when the return adequately identified the nature of the item at issue); *Intermountain Ins. Serv. of Vail v. Comm'r (Intermountain I)*, 98 T.C.M. (CCH) 144, at *2-3

11

(2009) (applying *Colony* and holding that an overstatement of basis was not an omission from gross income); *cf. Benson v. Comm'r*, 560 F.3d 1133, 1136 (9th Cir. 2009) (finding six year limitations period applied when failure to report "did not result from an overstatement of basis or other technical miscalculation"); *Grapevine Imports*,77 Fed. Cl. at 510 (holding that "the meaning of the word 'omits,' has as much application to the 1954 version of the statute, as it did the 1934 version, for, in both, that word is pivotal," and further finding no compelling reason to hold that the common understanding of the term "omits" had "shifted" since *Colony* and revisions to the Code); *but see Beard v. Comm'r*, – F.3d –, No. 09-3741, 2011 WL 222249, at *6 (7th Cir. Jan. 26, 2011) (creating a circuit split by finding that *Colony* was not controlling and holding that "an overstatement of basis can be treated as an omission from gross income"); *Home Concrete & Supply, LLC v. United States (Home Concrete I)*, 599 F. Supp. 2d 678, 687 (E.D.N.C. 2008) (finding that an overstatement of basis was an omission from gross income for purposes of § 6501(e)(1)(A), *rev'd*, — F.3d —, 2011 WL 361495 (2011); *Brandon Ridge Partners v. United States*, No. 8:06-cv-1340, 2007 WL 2209129, at *8 (M.D. Fla. July 30, 2007) (unpublished) (finding that *Phinney* compelled application of the extended limitations period because the taxpayers' tax returns did not adequately disclose the relevant transactions); *Salman Ranch Ltd v. United States (Salman Ranch I)*, 79 Fed. Cl. 189, 201-202 (2007), *rev'd*, 573 F.3d 1362 (Fed. Cir. 2009). *Salman Ranch (I)* and *Home Concrete (I)* have subsequently been overturned by the Federal Circuit and Fourth Circuit, respectively.

The government does not argue that these cases are distinguishable from the present matters, but rather asserts that they were wrongly decided. We disagree and find that *Colony*'s holding with respect to the definition of "omits gross income" remains applicable in light of the revisions to the Code. As such, an overstatement of basis that adequately appraises the Commissioner of the

No. 09-11061

nature of the item being reported does not constitute an "omission from gross income" for purposes of § 6501(e)(1)(A). The taxpayers in the present matters disclosed the nature of the items on their tax returns sufficient to notify the Commissioner of the item being reported. We join the Fourth, Ninth, and Federal Circuits by finding that *Colony*'s holding with respect to the definition of "omits from gross income" remains applicable in light of the revisions to the Code.

## C.

The government alternatively argues that *Colony* does not control the present matters because application of *Colony* to § 6501(e)(1)(A) subsections (i) and (ii) would render these subsections superfluous. The government argues that *Colony*'s finding that the ambiguous language found in § 275(c) was "in harmony" with the unambiguous language found in § 6501(e)(1)(A) was necessarily tied to these subsections.

Section 6501(e)(1)(A) was first enacted as § 275(c) of the Revenue Act of 1934, 48 Stat. 745. *See Badaracco v. Comm'r*, 464 U.S. 386, 392 (1984). Congress amended the statute in 1954, renumbering it as § 6501(e)(1)(A) and adding two subsections. *See* H.R. REP. NO. 83-1337, 4561 (1954).[6] Although courts have held

---

[6] At the time of the appeal the revised statute read:

    (e)    Substantial omission of items
        (1)    Income taxes.-In the case of any tax imposed by subtitle A

        (A)    General rule. If the taxpayer omits from gross income an amount properly includible therein and which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such a tax may be begun without assessment, at any time within 6 years after the return was filed. For the purposes of this subparagraph

No. 09-11061

that the language in the two statutes is virtually identical,[7] there is disagreement over the validity of *Colony* in light of the revisions.

Subsection (i) provides: "In the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services." 26 U.S.C. § 6501(e)(1)(A)(i).

Some courts have held that subsection (i) limits application of *Colony* to cases involving a trade or business. *See, e.g., Beard*, 2011 WL 222249 at *4 (finding that subsection (i) applies only when there is an omission of a receipt or accrual from a trade or business); *Salman Ranch (I)*, 79 Fed. Cl. at 200 (finding *Colony* applicable only in the case of business and trade income); *Home Concrete (I),* 599 F. Supp. 2d at 684 ("Subsection (i) redefines gross income for purposes of § 6501(e)(1)(A) in cases involving a trade or business."); *Brandon Ridge Partners*, 2007 WL 2209129, at *7 (finding that application of *Colony* outside the

> (i)     In the case of a trade or business the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and
>
> (ii)    In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

26 U.S.C. § 6501(e).

[7] *See, e.g., Badaracco v. Comm'r*, 464 U.S. 386, 392 (1984) (noting that § 6501 was "first introduced" as § 275(c)); *Salman Ranch Ltd v. United States (Salman Ranch II)*, 573 F.3d 1362, 1379 (Fed. Cir. 2009) (describing § 275(c) as the predecessor to § 6501); *Home Concrete & Supply, LLC v. United States*, 599 F. Supp. 2d 678, 684 (E.D.N.C. 2008) ("It is correct to say that the language of § 275(c) is virtually identical to a portion of § 6501(e)(1)(A).").

context of a trade or business "would render § 6501(e)(1)(A) superfluous"); *see also CC & F W. Operations Ltd. P'ship v. Comm'r*, 273 F.3d 402, 406 n.2 (1st Cir. 2001) (declining to reach the issue but noting that whether *Colony*'s "main holding" applies in light of subsection (i) "is at least doubtful" because the implication is that *Colony* does not apply to other types of income).

Other courts have found *Colony* applicable to all taxpayers in light of the revised statute. *See, e.g., Home Concrete (II)*, 2011 WL 361495, at *4 (finding that *Colony* "straightforwardly construed the phrase 'omits from gross income,' unhinged from any dependency on the taxpayer's identity as a trade or business selling goods or services"); *Salman Ranch (II)*, 573 F.3d at 1372-73 ("*Colony* "interpreted the language of § 275(c) based upon what it viewed as congressional intent and purpose, without ever mentioning the taxpayer's trade or business."); *Bakersfield*, 568 F.3d at 778 (finding that *Colony* "did not even hint that its interpretation of § 275(c) was limited to cases in which the taxpayer was engaged in a 'trade or business'"); *UTAM*, 98 T.C.M. (CCH) 442, at *3 ("Neither the language nor the rationale of *Colony* can be limited to the sale of goods or services by a trade or business."); *Intermountain (I)*, 98 T.C.M. (CCH) 144, at *3 n.5 (declining to "diminish" *Colony*'s holding); *Grapevine Imports*, 77 Fed. Cl. at 511 (declining to find that application of *Colony* was limited to transactions involving the sale of goods or services by a trade or business).

The government argues that Congress would not have included the phrase "in the case of a trade of business" and "amounts received or accrued from the sale of goods or services" if it had not intended for the definition of gross income for purposes of § 6501(e)(1)(A)(i) to apply outside the context of trade or business engaged in the sale of goods or services. The government further asserts that taxpayers' construction of the term "omits" without reference to the term "gross income" focuses only on one component of the calculation, thus excluding

No. 09-11061

consideration of one of the two figures that result in gain (the calculation of basis) and therefore renders the gross receipts provision meaningless.

*Bakersfield* offered a comprehensive analysis when disagreeing with the government's argument. 568 F.3d at776. The court held that when comparing the two amounts needed to calculate gross income for purposes of § 6501(e)(1)(A), the gross income omitted with the gross income as stated in the return, the court found that whether an amount was omitted was a separate issue from whether the amount omitted exceeded 25% of the taxpayer's gross income. *Id*. at 776.

> Because § 6501(e)(1)(A)(i) changes the definition of 'gross income' for taxpayers in a trade or business, it potentially affects both the numerator (the omission from gross income) and the denominator (the total gross income stated in the return). *Colony*'s holding, however, affects only the numerator, by defining what constitutes an omission from gross income.
>
> When there is no dispute about the amount of gross income omitted, the denominator, the total amount of gross income stated in the return, determines whether the omission meets the 25% threshold that triggers the six-year limitations period. For taxpayers not in a trade or business, the denominator is the amount of gross income (gross receipts minus basis); for taxpayers in a trade or business, the denominator is the total amount of money received without any reduction for basis (gross receipts).

*Id*. at 776-77. Thus, when the amount omitted (the numerator) is not in dispute, applicability of the extended limitations period turns on whether the court was obliged to apply subsection (i)'s definition of "gross income" for a trade or business when determining the amount of gross income stated in the return (the denominator). *Id*. at 777 (citing *Hoffman v. Comm'r*, 119 T.C. 148, 148, 150 (2002)). However, when the circumstances involve the sale of goods or services by a trade or business, whether subsection (i) applies is the dispositive issue

"because it determine[s] whether the omitted amount of gross income constitute[s] more than 25% of the gross income stated in the return, wholly aside from *Colony*'s holding regarding what constitutes an omission from gross income." *Id.*

The court further noted that Congress did not alter the language in § 6501(e)(1)(A). *Id.* at 775. "Although the IRS would have us infer that Congress's addition of subparagraph (i) casts the language in the body of § 6501(e)(1)(A) in a different light, we can equally infer that Congress in 1954 intended to clarify, rather than rewrite, the existing law." *Id.* at 776. The court concluded:

> [Congress] could have expressly added a definition of 'omits' if it wanted to overrule the cases that concluded, as the Supreme Court later did in *Colony*, that 'omits' does not include an overstatement of basis. Instead, Congress allowed the preexisting general definition of 'omits' to carry forward into the successor provision, and additionally provided for a special definition of 'gross income' in the case of a 'trade or business.'

*Id.* "[T]he fact remains that *Colony* represents an interpretation of the very same language that is now found in § 6501(e)(1)(A), and in the years since *Colony*, Congress has not indicated that the Court's interpretation of the language of § 275(c) should not apply to § 6501(e)(1)(A)." *Salman Ranch (II)*, 573 F.3d at 1373.

*Salman Ranch (II)* held that, by its terms, the language of subsection (i) states how gross income is calculated for purposes of § 6501(e)(1)(A) when the income arises from a trade or business engaged in the sale of goods or services. 573 F.3d at 1373. *Colony* "did not speak to the calculation of 'gross income' . . . [r]ather, it identified the situations in which a taxpayer 'omits from gross income an amount properly includible therein.'" *Id.* at 1375. The court held that subparagraph (i), "which explains how 'gross income' is calculated when a trade

17

or business is involved," is not made superfluous simply by finding that an overstatement of basis is not an omission from gross income. *Id*.

*Salman Ranch* further held that the legislative history of § 6501(e)(1)(A) supported a finding that subsection (i) was not rendered superfluous by application of *Colony*. *Id*. at 1375-76. "Congress added subparagraph (i) to resolve a conflict between the IRS and taxpayers about how to calculate gross income in the case of a trade or business." *Id*. (citing *Hearings Before the Senate Comm. on Finance on H.R. 8300 (part 2)*, 83rd Cong. 984 (1954) (letter of Harry N. Wyatt) (discussing "disagreement evidenced by the case law between the [IRS] and some of the courts as to whether . . . [i]n the case of a business, the term 'gross income' should be construed as gross receipts and gross sales, or as net receipts and net sales"). *Salman Ranch* held that, "[i]n light of this conflict, we believe that Congress enacted subparagraph (i) . . . to assist the IRS in its calculation of whether any omitted gross income exceeded 25% of the gross income stated in the return." *Id*. at 1376.

We agree with the analysis presented in *Bakersfield* and *Salman Ranch (II)* and hold that a fair reading of § 6501(e)(1)(A)(i) supports our finding that subsection (i) was intended to define gross income for the sale of goods or services by a trade or business as gross receipts from those sales. Under the Code, gross income of a trade or business is usually calculated by subtracting the cost of goods sold from the gross receipts of the sale. 26 U.S.C. § 61(a). Subsection (i) provides an alternative to this customary definition in the context of sales of goods or services by a trade or business by defining "gross income" as gross receipts rather than gross receipts less the cost of goods sold. *See* § 6501(e)(1)(A)(i). Thus, pursuant to § 6501(e)(1)(A), in order for an omission from gross income to arise in the context of sales of goods or services by a trade or business, the return must omit a receipt. As such, subsection (i) is not rendered superfluous by application of *Colony* outside of the context of a trade or business.

No. 09-11061

**D.**

The government further argues that in enacting § 6501(e)(1)(A)(ii), Congress intended that an item could be omitted from gross income without it having been entirely omitted from the face of the return. *See Phinney*, 392 F.2d at 685. Subsection (ii) states:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

26 U.S.C. § 6501(e)(1)(A)(ii). Subsection (ii) thus provides a "safe harbor" for omissions of amounts which, though not included in the gross income as stated in the tax return, are adequately disclosed such that the IRS has sufficient notice.

> [F]rom the plain language of (ii), it is possible for an amount to be 'omitted from gross income' and disclosed on the face of the return. Subsection (ii) simply makes it possible for a taxpayer to be protected if the taxpayer discloses the amount in a way sufficient to alert the IRS to the substance and size of the item omitted. If a taxpayer omits an amount from gross income yet includes the item which causes the amount to be omitted on the taxpayer's return in such a way that the IRS is apprised of the 'nature and amount' of the item, then that item is not considered 'omitted' for purposes of § 6501(e)(1)(A). However, where a taxpayer includes an item on a return in such a way that the IRS is not apprised of the 'nature and amount' of the item, then that item has been 'omitted' from gross income for purposes of § 6501(e)(1)(A), even though it is included on the face of the return.

19

No. 09-11061

*Home Concrete (I)*, 599 F. Supp 2d at 686; *see also Salman Ranch (II)*, 573 F.3d at 1376 (finding that the adequate disclosure provision is related to *Colony*'s expression that Congress's intent in enacting § 275(c) was to afford the Commissioner additional time to investigate returns where an item has been omitted such that *Colony* has not been rendered moot) (citing *Colony*, 357 U.S. at 36). As discussed *infra*, subsection (ii) is in harmony with both this court's decision in *Phinney* and the Supreme Court's decision in *Colony*. Thus, it is proper for this court to apply *Colony* in light of the revised statute. The government does not assert that the taxpayers failed to report any receipt or accrual in its computation of gross income. Rather, the government contends only that the taxpayers overstated their basis in the sale of assets. As such, the taxpayers' errors do not trigger the extended limitations period.

### III.

Finally, the government argues that recently promulgated Treasury Regulations clarify that the definition of "omits from gross income" as found in § 6501(e)(1)(A) includes an overstatement of basis, thus the regulations are determinative.

On September 28, 2009, the Treasury issued Temporary Regulations §§ 301.6501(e)-1T(b) and 301.6229(c)(2)-1T(b), pursuant to 26 U.S.C. § 7805(a). Section 7805(a) of the Tax Code authorizes the Treasury Department to promulgate "all needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805(a). The Temporary Regulations were simultaneously issued as proposed regulations and were issued as final regulations effective December 14, 2010 (the Regulations). *See* Treas. Reg. §§ 301.6501(e)-1, 301.6229(c)(2)-1.[8] The

---

[8] Although the Temporary Regulations were in effect at the time the government and taxpayers sought appellate review, because any difference between the Temporary and final Regulations are not material to our review, this opinion cites to the final version of the Regulations.

No. 09-11061

Regulations define "omission from gross income" as including "an understated amount of gross income resulting from an overstatement . . . of basis for purposes of sections 6501(e)(1)(A) and 6229(c)(2)." *Id.* at §§ 301.6501(e)-1(a)(iii) and 301.6229(c)(2)-1(a)(iii). The Regulations provide:

> In the case of amounts received or accrued that relate to the disposition of property, and except as provided in paragraph (a)(1)(ii) of this section, gross income means the excess of the amount realized from the disposition of the property over the unrecovered cost or other basis of the property. Consequently, except as provided in paragraph (a)(1)(ii) of this section, an understated amount of gross income resulting from an overstatement of unrecovered cost or other basis constitutes an omission from gross income for purposes of section 6501(e)(1)(A)(i).

Treas. Reg. § 301.6501(e)-1(a)(iii). The Regulations limit *Colony*'s applicability to circumstances where the taxpayer is a trade or business engaged in the sale of goods or services. *Id.* at § 301.6501(e)-1(a)(ii), (iii); T.D. 9511, 75 Fed. Reg. 78897, 78897 (Dec. 17, 2010). The Regulations also expressly disagree with the recent decisions in *Bakersfield* and *Salman Ranch (II)* applying *Colony* to the revised statute. *See* 75 Fed. Reg. 78897.

The government asserts that this court must afford the Regulations force of law deference and because the Regulations purport to apply retroactively they control the outcome of the present matters. *See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) (setting forth the standard for force of law deference, which affords agency regulations controlling weight, unless they are arbitrary, capricious, or contrary to the underlying statute). The taxpayers argue that the Regulations are an unreasonable interpretation of an unambiguous statute and contrary to Congressional intent. *See Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 476-77 (1979) (pre-*Chevron*

21

case applying a more limited standard of reasonableness to a treasury regulation). Finally, the taxpayers assert that the Regulations cannot apply retroactively because such action would re-open previously time-barred claims.

Because we hold that § 6501(e)(1)(A) is unambiguous and its meaning is controlled by the Supreme Court's decision in *Colony*, we need not determine the level of deference owed to the Regulations. The Regulations attempt to define "omits from gross income" for purposes of the revised statute. However, the government cites to no authority refuting prior case law that has held § 6501(e)(1)(A) to be unambiguous with respect to the definition of "omits." *See Colony*, 357 U.S. at 37 (finding that "without doing more than noting the speculative debate between the parties as to whether Congress manifested an intention to clarify or to change the 1939 Code" when Congress enacted § 6501 of the 1954 Tax Code, "we observe that the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A)); *Salman Ranch (II)*, 573 F.3d at 1374 (finding the phrase "omits from gross income" identical in both statutes)*; Bakersfield*, 568 F.3d at 775-76 (applying *Colony*'s definition of "omits from gross income" because it had construed language identical to the revised statute). The Regulations attempt to "trump" what is established precedent on what constitutes an "omission from gross income" for purposes of § 6501(e)(1)(A). *See Home Concrete (II)*, 2011 WL 361495, at *7 (declining to apply the Regulations retroactively because the Supreme Court stated in Colony that § 6501(e)(1)(A) is unambiguous as to the very issue to which the regulation purports to speak").

Moreover, the Regulations state that they "apply to taxable years with respect to which the period for assessing tax was open on or after September 24, 2009." T.D. 9511, 75 Fed. Reg. 78897, 78897 (Dec. 17, 2010). The government argues that this provision applies to taxable years for which the limitations period did not expire with respect to the tax year at issue before September 24, 2009. The Regulations state that "'the applicable period' is not the 'general'

three-year limitation period . . . [because] the three-year period does not 'close' a taxable year if a longer period applies." *Id*. at 78898. The government thus makes a circular argument that the Regulations apply to the taxpayers because the statute of limitations remains open under the language of the newly promulgated Regulations. *See Home Concrete (II)*, 2011 WL 361495, at * 6 (finding that such argument "attemps to redraft [ ] § 6501" because Congress specifically set forth the circumstances under which the extended limitations period applies and thus "the IRS's argument that the period for assessing tax is open-or indeed may be re-opened . . . so long as litigation is pending is contrary to the clearly and unambiguously expressed intent of Congress and must fail") (citations omitted); *Intermountain Ins. Serv. of Vail, LLC. v. Comm'r (Intermountain II)*, 134 T.C. No. 11, at *1 (2010) (declining to engage in a "hypothetical" inquiry to determine the applicable limitations period because when urging the same argument, the government's interpretation was "irreparably marred by circular, result-driven logic").[9]

---

[9] Although we hold that § 6501(e)(1)(A) is unambiguous and its meaning is controlled by the Supreme Court's decision in *Colony*, we note that even if the statute was ambiguous and *Colony* was inapplicable, it is unclear whether the Regulations would be entitled to *Chevron* deference under *Mayo Foundation for Medical Research v. United States*, 131 S. Ct. 704, 711 (2011). *See, e.g., Home Concrete & Supply, LLC v. United States*, — F.3d —, No. 09-2353) 2011 WL 361495, *7 (4th Cir. Feb. 7, 2011) (declining to afford the Regulations *Chevron* deference because the statute is unambiguous as recognized by the Supreme Court in *Colony*). In *Mayo*, the Court held that the principles underlying its decision in *Chevron* "apply with full force in the tax context" and applied *Chevron* to treasury regulations issued pursuant to 26 U.S.C. § 7805(a). *Id*. at 707. Significantly, in *Mayo* the Supreme Court was not faced with a situation where, during the pendency of the suit, the treasury promulgated determinative, retroactive regulations following prior adverse judicial decisions on the identical legal issue. "Deference to what appears to be nothing more than an agency's convenient litigating position" is "entirely inappropriate." *Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 213 (1988). The Commissioner "may not take advantage of his power to promulgate retroactive regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulations." *Chock Full O' Nuts Corp. v. United States*, 453 F.2d 300, 303 (2d Cir. 1971).

Moreover, *Mayo* emphasized that the regulations at issue had been promulgated following notice and comment procedures, "a consideration identified . . . as a significant sign that a rule merits *Chevron* deference." 131 S. Ct. at 714. Legislative regulations are generally

No. 09-11061

Because the Regulations are an unreasonable interpretation of settled law, we find that they are not applicable to the taxpayers in the present matters. As such, we need not determine whether the Regulations may apply retroactively.

## IV.

For the foregoing reasons, we affirm the tax court's judgment in favor of the taxpayers in matter 09-60827, *Commissioner v. M.I.T.A.* We reverse the district court's grant of summary judgment in favor of the government in matter 09-11061, *United States v. Burks*, and remand for further proceedings consistent with this opinion.

---

subject to notice and comment procedure pursuant to the Administrative Procedure Act. *See* 5 U.S.C. § 553(b)(A). Here, the government issued the Temporary Regulations without subjecting them to notice and comment procedures. This is a practice that the Treasury apparently employs regularly. *See* Kristin E. Hickman, *A Problem of Remedy: Responding to Treasury's (Lack of) Compliance with Administrative Procedure Act Rulemaking Requirements,* 76 GEO. WASH. L. REV. 1153, 1158-60 (2008) (noting that the treasury frequently issues purportedly binding temporary regulations open to notice and comment only after promulgation and often denies the applicability of the notice and comment procedure when issuing its regulations because that requirement does not apply to regulations that are not a significant regulatory action, while continuing to assert that the regulations are entitled to legislative regulation level deference before the courts). That the government allowed for notice and comment after the final Regulations were enacted is not an acceptable substitute for pre-promulgation notice and comment. *See U.S. Steel Corp. v. U.S. EPA*, 595 F.2d 207, 214-15 (5th Cir. 1979).

24